*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* COPPES, Minors.

UNPUBLISHED
March 24, 2022

No. 358478
Jackson Circuit Court
Family Division
LC No. 14-000225-NA

Before: O'BRIEN, P.J., and SHAPIRO and BOONSTRA, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating her parental rights to her minor children, CC, NC, BC, RC, and SC under MCL 712A.19b(3)(c)(*i*), MCL 712A.19b(3)(c)(*ii*), MCL 712A.19b(3)(g), and MCL 712A.19b(3)(j). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In February 2019, petitioner, the Michigan Department of Health and Human Services (DHHS) filed a petition seeking the removal of CC, NC, BC, and RC from respondent's custody, alleging that respondent was using methamphetamine.[1] The four children were removed from respondent's custody and placed in foster care. Respondent pleaded no contest to the allegations in the petition in March 2019, and the trial court took jurisdiction over the children. Respondent's parent-agency treatment plan required her to participate in services to address her substance abuse as well as undergo a psychological evaluation.

SC was born in July 2019. The day after SC's birth, DHHS filed a petition seeking the removal of SC from respondent's custody. The petition alleged that respondent had admitted to

---

[1] The legal father of all five minor children was a respondent in the proceedings below and voluntarily relinquished his parental rights to the children. He is not a party to this appeal.

using heroin and methamphetamine during her pregnancy. SC was removed from respondent's care and placed in foster care.[2]

In January 2020, the trial court approved petitioner's request to change the goal for all five children to adoption. Petitioner sought the goal change because 182 days had elapsed since the initial dispositional order and the conditions that led to the adjudication had not been rectified. The trial court found that petitioner had made reasonable efforts to reunite the family, but that respondent had not made progress on her service plan. However, the trial court ordered that petitioner continue to make reasonable efforts because an updated petition seeking termination had not been filed. At this hearing, the trial court also suspended respondent's parenting time.

In February 2020, petitioner filed a supplemental petition seeking termination of respondent's parental rights to all five children. At a hearing held the same day, the trial court ordered that petitioner need not continue to make reasonable efforts toward reunification.

The termination trial was originally scheduled for May 2020. However, because of the COVID-19 pandemic, the termination trial was not held until July 2021, more than 14 months after the originally-scheduled date.

At the termination trial, the trial court heard testimony regarding respondent's substance abuse. Respondent had been undergoing methadone treatment at Victory Clinic since 2014, except for when she was at an inpatient rehabilitation facility in 2019; respondent received methadone from a different provider during that time period. Elise DeBrugler, a substance abuse counselor from Victory Clinic, testified that the goal of methadone treatment is to taper the methadone dose until the patient no longer used methadone. She testified that it is the patient who determines when and to what extent the dose would be tapered. DeBrugler testified that respondent had only begun to taper her methadone dose in the month before the termination trial. Conversely, respondent testified that she had begun to taper her dose 17 weeks before the termination trial by lowering her dosage one milligram per week. Respondent also testified that methadone did not impact her ability to parent and did not make her high. Madison Banks, a foster-care supervisor, testified that respondent had been offered 119 drug screens during the pendency of the case and had taken 53 of them. She had tested positive for marijuana and alprazolam (a prescription benzodiazepine for which respondent did not have a prescription) in August 2019.

The trial court also heard testimony regarding the steps that respondent had taken to rectify her mental health problems. Respondent initially underwent a psychological evaluation in November 2019. She scored high for anxiety and depression on this evaluation. However, respondent did not take additional steps to rectify this situation until June 2021, despite four such recommendations in 2019 and two more in 2021. Banks testified that after respondent began engaging in mental health services in June 2021, respondent still missed several appointments.

---

[2] Respondent argues in her brief that a hearing was held in September 2019, at which she pleaded no contest to the allegations in the July 2019 petition. However, no such hearing appears on the register of actions that was provided to this Court. In any event, respondent does not challenge the trial court's exercise of jurisdiction with respect to SC.

Respondent's therapist testified that respondent had met with her only once, two days before the termination trial began.

The trial court also heard testimony regarding respondent's housing. At the time of the termination trial, respondent was living in a one-bedroom apartment that lacked furniture or appliances. Banks testified noted that respondent's housing was inadequate for five children. When asked by the trial court why she did not have adequate housing to care for five children, respondent said that it did not make sense for her to have a larger apartment that would be suitable for the children at a time when she did not have custody of the children.

Banks testified that all five children had been placed with relatives and were doing very well, or significantly better, in their placements. All of the children's foster parents were interested in adoption.

At the conclusion of the termination trial, the trial court found by clear and convincing evidence that petitioner had established grounds for termination under MCL 712A.19b(3)(c)(*i*), MCL 712A.19b(3)(c)(*ii*), MCL 712A.19b(3)(g), and MCL 712A.19b(3)(j). The trial court noted that respondent had been receiving methadone treatment for seven years and that respondent had not sought to address this "methadone problem" until she began tapering her dose the month before the termination trial. Additionally, the trial court concluded that respondent's efforts to improve her mental health were "[t]oo little, too late." The trial court also found by a preponderance of the evidence that it was in the children's best interests to terminate respondent's parental rights. This appeal followed.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court erred by finding by clear and convincing evidence that there were statutory grounds for termination of respondent's parental rights. We disagree.

We review for clear error a trial court's decision that a statutory ground for termination of parental rights has been established. *In re JK*, 468 Mich 202, 209; 661 NW2d 216 (2003). We also review for clear error a trial court's factual findings. See MCR 3.911(K); *In re Gonzales/Martinez*, 310 Mich App 426, 430; 871 NW2d 868 (2015). The trial court's decision "is clearly erroneous if, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich at 209-210. The petitioner must only establish one statutory ground for termination of a respondent's parental rights. See *In re Olive/Metts*, 297 Mich App 35, 41; 823 NW2d 144 (2012). Therefore, so long as the trial court properly found at least one ground for termination, any error by the trial court in finding that another statutory ground also existed is harmless. *In re Powers Minors*, 244 Mich App 111, 118; 624 NW2d 472 (2000).

### A. MCL 712A.19B(3)(c)(*i*)

Under MCL 712A.19b(3)(c)(*i*),

[t]he court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, find either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

In this case, the condition that led to adjudication was respondent's substance abuse. It is undisputed that more than 182 days had elapsed since the issuance of the initial dispositional order. Therefore, the issue at the termination trial was whether respondent's substance abuse had been rectified or would be rectified within a reasonable period of time. See MCL 712A.19b(3)(c)(*i*).

The trial court noted that respondent had begun receiving methadone from Victory Clinic in September 2014 and that she had been receiving services and using methadone there for seven years. The trial court found that the purpose of methadone was to wean someone who was addicted to opiates off of the opiates. The trial court credited the testimony of DeBrugler, who testified that respondent had just started weaning her methadone dose in the last month before the termination trial. The trial court noted that this was contrary to respondent's testimony that she had started weaning her methadone dose 17 weeks before the termination trial. The trial court found that respondent had a "methadone problem," and that respondent had not addressed this problem. The trial court also noted respondent's use of other drugs, including while pregnant with SC, and that respondent had missed over half of her recommended drug screens.

Respondent does not dispute the trial court's findings of fact. Rather, respondent disagrees with the trial court's conclusion that respondent's drug use had not been rectified, or would not be rectified within a reasonable period. Our review of the record satisfies us that the trial court's decision was not clearly erroneous.

Respondent had been using methadone since 2014. During that time, she had a documented history of abusing other controlled substances, including while pregnant. Respondent only began to taper her methadone dose in the weeks before the termination trial and, by her own testimony, had only reduced her dose from 160 milligrams to 143 milligrams. The record reveals that up to the point of termination, respondent was, at best, still dependent on methadone. It was not clearly erroneous for the trial court to conclude that respondent had not rectified this condition. Moreover, the record was devoid of evidence that respondent had addressed her use of other controlled substances or even accepted that she had a current substance abuse problem; in fact, respondent opined that any positive drug tests since she left the rehabilitation facility in April 2019 were "false positives," which the trial court found to be "incredulous."

Furthermore, it was not clearly erroneous for the trial court to find that this condition would not be rectified within a reasonable period of time. Respondent had been taking methadone for nearly seven years at the time of the termination trial. Even though there was evidence that she had begun to taper her dose, it was reasonable for the trial court to conclude, based on her lengthy history of methadone use, that this condition would not be rectified within a reasonable period of

-4-

time. Moreover, respondent continued to use other controlled substances even while being given methadone. The trial court did not clearly err when it concluded that termination of respondent's parental rights was appropriate under MCL 712A.19b(3)(c)(*i*).

## B. MCL 712A.19B(3)(c)(*ii*)

Under MCL 712A.19b(3)(c)(*ii*),

[t]he court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, find either of the following:

* * *

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Respondent argues that the trial court erred by finding that this statutory ground had been proven, because no other conditions had been identified for her to rectify. Respondent's argument is contradicted by the record. The condition that appeared in the original petition was respondent's substance abuse. Later, respondent received recommendations to rectify issues with her mental health and housing; at a review hearing held in May 2019, the trial court specifically ordered that respondent complete a psychological evaluation and obtain and maintain appropriate housing. The trial court made findings and conclusions on both of those issues, determining that neither of these conditions had been rectified. The trial court's conclusion is supported by the evidence presented at trial that respondent did not have appropriate housing for the five children and had only begun to address her mental health issues in the days before the termination trial took place. Banks opined at trial that it would take a minimum of six months after the termination trial for respondent to rectify these issues, and that such a period of time was unreasonable in light of the children's ages and time spent in foster care. The trial court did not clearly err when it found that termination of respondent's parental rights was appropriate under MCL 712A.19b(3)(c)(*ii*).

Because the trial court did not err by holding that statutory grounds for termination had been proven under MCL 712A.19b(3)(c)(*i*) and (*ii*), we need not address its holding regarding statutory grounds for termination under MCL 712A.19b(3)(g) and (j). *Powers*, 244 Mich App at 118. However, we do note that this Court has held that "a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014).

## III.  REASONABLE EFFORTS

Respondent also argues that her parental rights were wrongfully terminated because DHHS failed to make reasonable efforts at reunification.  Specifically, respondent argues that reasonable efforts and respondent's parenting time should have been reinstated when the COVID-19 pandemic delayed the termination trial.  Respondent argues that by not ordering petitioner to continue to make reasonable efforts, the trial court created circumstances that ensured that respondent's parental rights would be terminated.  We disagree.

To preserve a challenge to the sufficiency of the services provided by DHHS, respondent must object or indicate that the services provided to them were inadequate.  *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012).  Respondent did not raise this issue with the trial court, either at the time or after the goal was changed to termination in February 5, 2020.  This issue is, therefore, unpreserved and reviewed for plain error affecting substantial rights.  *In re Baham*, 331 Mich App 737, 745; 954 NW2d 529 (2020); see also *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).  Plain error "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings."  *Id*.

"Generally, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan."  *In re HRC*, 286 Mich App 444, 462; 781 NW2d 105 (2009).  The petitioner is not required to provide reunification services when the goal is termination of parental rights.  *Id*. at 463.

The caselaw is clear that when the goal is termination, petitioner is not required to make reasonable efforts at reunification.  See *id*.  Therefore, even assuming that DHHS stopped making reasonable efforts at reunification in February 2020, that would have been appropriate in light of the goal change.  Additionally, the trial court has the authority to suspend the parenting time of a parent who is the subject of a termination petition.  MCL 712A.19b(4).

The caselaw cited by respondent is inapplicable to this matter.  Respondent cites *In re B and J*, 279 Mich App 12; 756 NW2d 234 (2008), to support her proposition that due process is denied when the state deliberately creates circumstances that virtually ensure the termination of the respondent's parental rights.  But in that case, the petitioner took steps to have the respondents deported from the country and then sought to terminate the respondents' parental rights because, as a consequence, they could not care for the children.  *Id*. at 15, 19.  That case has no bearing on the matter before us.  The record shows that DHHS attempted to provide services to respondent from the time of initial disposition until the goal was changed to termination more than a year later.  The fact that the termination trial was delayed did not obligate DHHS to make additional efforts at reunification.  Further, respondent could have made use of the additional time to rectify the issues identified by the trial court, but did not even attempt to do so until shortly before the termination trial.  We find no plain error requiring reversal.  See *HRC*, 286 Mich App at 462.

## IV. BEST-INTEREST DETERMINATION

Finally, respondent argues that the trial court erred when it found by a preponderance of the evidence that it was in the best interests of the children to terminate respondent's parental

rights. We disagree. We review for clear error a trial court's decision that termination of parental rights is in the children's best interests. *JK*, 468 Mich at 209.

If the trial court finds that there are statutory grounds for termination of parental rights, the trial court must order termination of a parent's parental rights if it finds that termination is in a child's best interests. MCL 712A.19b(5). The petitioner must prove by a preponderance of the evidence that termination of parental rights is in the child's best interests. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). When making a best interest determination, the focus is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). When making this determination, the trial court "may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App 35, 41-42 (citations omitted). "Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan." *In re Payne/Pumphrey/Fortson Minors*, 311 Mich App 49, 64; 874 NW2d 205 (2015) (quotation marks and citation omitted). This Court has stated that the trial court must determine each child's best interests individually. The trial court must consider the needs of each child, but need only specifically address the best interests of individual children if the children's interests significantly differ. *Olive/Metts*, 297 Mich App at 42; *In re White*, 303 Mich App 701, 715; 846 NW2d 61 (2014).

In this case, all five children were placed with paternal relatives who wished to adopt them. The trial court found that the children were doing "admirably" in their placements, they had high grades, and their behavior had improved. The trial court concluded that the placements were a good place for the children.

The trial court also noted that this case had been ongoing for a long period of time and that there was not a likelihood that the situation would be rectified within a reasonable time. For the three oldest children, CC, NC, and BC, the trial court noted that they did not want to return to the custody of their parents. The trial court found that the children's needs were being met in their placements, that the children were able to see each other almost daily, and that there was a strong sibling bond.

Respondent argues that the trial court erred when it did not make specific findings for each child. But respondent has not identified how the children's interests differed to a degree that would require such individualized findings. See *id*. The biggest difference among the children is their ages, ranging from 14 years old to 2 years old. The trial court did address that difference, and made specific age-related findings, such as taking into consideration the wishes of the three children who were of sufficient age to provide that information. The trial court also noted that SC had been in foster care for two years, compared to the other four children who had been in foster care for $2^1/_2$ years.

Respondent also argues that the trial court did not indicate the basis for its decision that termination was in the children's best interests. This argument is contradicted by the record. The trial court detailed the basis for its conclusion, discussing a number of pertinent facts. Respondent also argues that it was error for the trial court to not explicitly address the bond between respondent and the children, but respondent identified no caselaw that requires the court to explicitly address

this factor. The cases that lay out the relevant considerations for this analysis described factors that the trial court *may* consider. See *Payne/Pumphrey/Fortson*, 311 Mich App at 63-64; *Olive/Metts*, 297 Mich App at 41-42. Respondent has not identified any authority that requires the consideration of any specific factor. Of these factors, the trial court made findings regarding the majority of them. See *id*.

Given the substantial number of factors addressed by the trial court, all of which support its conclusion that it was in the best interests of the children to terminate respondent's parental rights, the trial court did not clearly err when it found by a preponderance of the evidence that termination was in the children's best interests. *JK*, 468 Mich at 209.

Affirmed.


/s/ Colleen A. O'Brien
/s/ Mark T. Boonstra